ROGERS, Circuit Judge,
concurring:
I concur in affirming the grant of summary judgment to Post Properties, Inc. and its affiliates (“Post”) for lack of constitutional standing by the Equal Rights Center (“ERC”). At the summary judgment stage, after the close of discovery, the ERC could not rely on mere allegations of injury and it failed to “set forth by affidavit or other evidence specific facts” establishing that the ERC had suffered a legally cognizable injury in fact at the time it filed suit against Post. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(e)). Such allegations were sufficient in Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 *1143 L.Ed.2d 214 (1982), and Spann v. Colonial Village, Inc., 899 F.2d 24 (D.C.Cir.), cert. denied, 498 U.S. 980, 111 S.Ct. 508, 509, 112 L.Ed.2d 521 (1990), because the proceedings were at the preliminary motion to dismiss stage, and had not advanced to summary judgment. See Lujan, 504 U.S. at 561, 112 S.Ct. 2130; Sierra Club v. EPA, 292 F.3d 895, 898-99 (D.C.Cir.2002). The documentary submissions by the ERC either did not identify when expenditures were incurred or describe activities other than those undertaken in pursuit of suing Post. See Op. at 1141-42.
Nonetheless, in my view, Fair Employment Council of Greater Washington v. BMC Marketing Corp., 28 F.3d 1268 (D.C.Cir.1994), went too far in suggesting that “testing” expenditures are necessarily self-inflicted injuries that cannot suffice to show injury in fact for purposes of constitutional standing, id. at 1276, and in holding that the deflection of an organization’s time and money from its counseling programs “to increase legal pressure” directed at discrimination are insufficient, id. at 1276-77. The court rejected as a matter of logic, see id. at 1277, the Seventh Circuit’s approach in Village of Bellwood v. Dwivedi 895 F.2d 1521, 1526 (7th Cir.1990), which acknowledged the practical realities of how organizations work to combat discrimination. The Seventh Circuit held that even when a fair housing organization’s other activities had not been impaired by the defendant’s discriminatory practices, “the only injury which need be shown ... is deflection of the agency’s time and money from counseling to legal efforts directed against discrimination.” Id. at 1526. This standard, the court explained, was consistent with Havens because “[tjhese are opportunity costs of discrimination, since although the counseling is not impaired directly there would be more of it were it not for the defendant’s discrimination.” Id. at 1526.
Be that as it may, BMC is binding in this circuit and, absent en banc review by this court or a Supreme Court decision on point, organizations must prepare their documentary showings at the post-discovery summary judgment stage to avoid the effects of the limitation established by BMC in “rejecting] the ... suggestion that the mere expense of [‘]testing[’] [the defendant] constitutes ‘injury in fact’ fairly traceable to [the defendant’s] conduct.” 28 F.3d at 1276. Today, the court reins in BMCs reach by identifying the questions a district court must ask, see Op. at 1141, and re-emphasizing that “the ERC’s alleged diversion of resources to programs designed to counteract the injury to its interest in promoting fair housing could constitute [the requisite] injury,” id. Such a diversion might be based on, or the result of, research, investigation, or “testing” necessary to design and implement such programs. This, in my view, is a step in the right direction.
Accordingly, I concur.